UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                 )
                                       )      **JUDGE RICHARD L. SPEER**
In re John/Candace Sarnovsky           )
                                       )      Case No. 09-30037
    Debtor(s)                          )
                                       )
                                       )

## DECISION AND ORDER

The matter now before the Court concerns whether the Debtors are entitled to a distribution of estate assets. This circumstances giving rise to this issue are as follows:

## BACKGROUND

On January 5, 2009, the Debtors, John and Candace Sarnovsky, sought relief in this Court, filing a petition under the provisions of Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In accordance with 11 U.S.C. § 701, a trustee was appointed to administer the Debtors' estate. Thereafter, pursuant to those duties prescribed by the Bankruptcy Code, the Trustee collected and reduced to money property of the Debtors' bankruptcy estate. 11 U.S.C. § 704(a)(1).

On April 20, 2010, a Hearing was held on the Final Application for Fees and Expenses submitted by the Trustee. (Doc. No. 59). In support of his Application, the Trustee submitted his final report, attaching an accounting, showing that the Debtors' estate had $16,196.24 available for distribution. (Doc. No. 56).

From these available assets, the Trustee proposed in his report to make the following disbursements: First, for his fees and expenses, the Trustee sought an administrative expense of $3,255.02. Second, the Trustee proposed to pay the remaining $12,941.22 in estate assets to the

In re: John and Candace Sarnovsky
Case No. 09-30037

Debtors who had filed two priority, unsecured claims totaling $19,573.00. Based upon this proposed distribution, the Trustee's report set forth that the remaining allowed claims would not receive any distribution from the estate. These remaining claims, comprising five general unsecured claims, totaled $85,893.94 in value.

At the conclusion of the Hearing, the Court granted the Trustee's Application for Fees and Expenses. (Doc. No. 60.). The Court, however, took under advisement the matter concerning the Trustee's proposed distribution of estate assets to the Debtors, affording both the Trustee and the Debtors the opportunity to submit briefs on the issue. (Doc. No. 59). Within the time frame allowed, however, no briefs were filed. This Decision is therefore made upon the Court's independent review of the law.

## DISCUSSION

The underlying matter before the Court concerns the allowance of the priority claims filed by the Debtors against their bankruptcy estate. Matters concerning the allowance or disallowance of claims against the estate are deemed by bankruptcy law to be core proceedings. 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court has jurisdiction to enter final orders and judgments on the matter of the Debtors' claims. 28 U.S.C. § 157(b)(1).

As a statutory duty, the Bankruptcy Code provides that the "trustee shall . . . make a final report and file a final account of the administration of the estate with the court and with the United States trustee." 11 U.S.C. § 704(a)(9). In this case, the final report submitted by the Trustee proposed to distribute, after payment of administrative expenses, the remaining estate assets, consisting of $12,941.22 in cash proceeds, to the Debtors, thereby leaving no further assets available for distribution to the five remaining allowed unsecured claims filed in this case. The Trustee based his

Page 2

**In re: John and Candace Sarnovsky**
**Case No. 09-30037**

proposed distribution on two priority claims being filed by the Debtors which together totaled $19,573.00.

The purpose of the final report and accounting, as required by § 704(a)(9), is to insure that bankruptcy trustees disclose and are held accountable for their handling of the estate. *Lopez-Stubbe v. Rodriguez-Estrada (In re San Juan Hotel Corp.)*, 847 F.2d 931, 939 (1st Cir. 1988). The United States Trustee is charged with the responsibility to review the accuracy and correctness of a trustee's final report. 11 U.S.C. § 704(a)(9); 28 U.S.C. § 586. Therefore, as a general matter of procedure, bankruptcy courts only intervene in matters concerning a trustee's final report when an objection is filed. FED.R.BANK.P. 5009; *Eresian v. Koza (In re Koza)*, 375 B.R. 711, 718 (1st Cir. B.A.P. 2007).

Nonetheless, a bankruptcy court may conduct an independent examination of a trustee's final report and, where cause is found to exist, decline to approve the report. *In re Anolik*, 207 B.R. 34 (Bankr. D.Mass. 1997). *See also Blodgett v. Stoebner (In re T.G. Morgan, Inc.*, 394 B.R. 478, 485 (8th Cir. B.A.P. 2008) ("... the final report in a case may present one last opportunity for a bankruptcy court to review a trustee's handling of an estate ..."). Cause to decline approval of a trustee's final report may be found to exist where the report proposes to distribute estate assets outside of the Bankruptcy Code's priority scheme. *See Hollingsworth v. Kaler (In re Hollingsworth)*, 331 B.R. 399, 401 (8th Cir. B.A.P. 2005).

In a Chapter 7 case, § 726(a) sets forth the order of priority for the distribution of those assets of the estate which the trustee has reduced to money. According to § 726(a), property of the estate is first distributed to claims defined under § 507 of the Code as priority claims. Both of the claims filed by the Debtors purport to fall within this category of claims.

Thereafter, if estate assets are still remaining, timely (and certain untimely) unsecured claims are entitled to receive a distribution of estate assets. It is this type of claim which constitutes the

Page 3

**In re: John and Candace Sarnovsky**
**Case No. 09-30037**

remaining claims filed in this case. Once this class of claims is fully paid, the following three categories of claims, listed in order of priority, are entitled to a distribution of estate assets: (1) all other tardily filed claims; (2) fines, penalties and noncompensatory damages; and (3) postpetition interest. Finally, if estate assets are still remaining after all these classes of claims have been fully paid, the debtor is entitled to any remaining surplus. The controversy in this case stems from this final level of distribution under § 726(a).

With a debtor being the last party entitled to any distribution of estate assets, a straightforward reading of § 726(a) easily lends itself to this conclusion: The Trustee, by proposing to pay the Debtors ahead of the other unsecured claimants, has inverted the order of distribution provided in § 726(a). In turn, to avoid such a misapplication, the Trustee's final report, and proposed distribution, is necessarily based on this supposition: The Debtors, having filed two priority claims against which no objection was filed, may be treated as priority claimants for purposes of § 726(a), thus entitling them to a distribution of estate assets ahead of their general body of unsecured creditors.

The two priority claims, totaling $19,573.00 in value, were made by the Debtors through the filing of two proofs of claims with the Court, wherein the Debtors claimed priority status by checking the box in the proof of claim form captioned, "Tax or penalties owed to governmental units – 11 U.S.C. § 507(a)(8)." (Cl. No. 3-2, 4-1). This bankruptcy section, § 507(a)(8), as cited by the Debtors as the statutory basis for their priority claims, affords priority status to allowed unsecured claims of a "governmental unit" for certain kinds of prepetition taxes. It is the understanding of the Court that the Debtors' claim of priority status under § 507(a)(8) was predicated on the Debtors paying, from their own personal assets, creditors (*e.g.*, the IRS) holding this type of claim.

Page 4

**In re: John and Candace Sarnovsky**
**Case No. 09-30037**

There are two glaring problems with the Debtors' position. First, by its express terms, priority status under § 507(a)(8) is only afforded to claims made by a "governmental unit."[1] Intuitively, individuals, such as the Debtors, are not governmental units. Even so, the Bankruptcy Code specifically excludes the Debtors from the definition of a "governmental unit."

The Bankruptcy Code defines a "governmental unit" broadly to include entities such as governmental departments and agencies, municipalities and foreign states. 11 U.S.C. § 101(27). A debtor is defined under the Bankruptcy Code as a *"person* . . . concerning which a case under this title has been commenced." 11 U.S.C. § 101(13) (emphasis added). The Code, in turn, defines the term "person" to include individuals, partnerships and corporations, but specifically excludes "governmental units."[2] The result: for purposes of bankruptcy law, an individual[3] debtor cannot be a "governmental unit."

Consequently, the Debtors, not qualifying under the Bankruptcy Code as a "governmental unit," do not satisfy one of the necessary prerequisites to assert a priority claim for purposes of § 507(a)(8). Their claims are, therefore, not entitled to priority in the distribution of estate assets

---

[1] Section 507(a)(8) begins by providing:

    (a) The following expenses and claims have priority in the following order:

        (8) Eighth, allowed unsecured claims of governmental units,

[2] A "governmental unit" may be considered a person in certain rare instances, not applicable here, such as when it acquires an asset from a person as the result of a loan guarantee agreement or as a receiver or liquidating agent.

[3] There exists one limited exceptions. A municipality, which may file a petition for relief under Chapter 9 of the Bankruptcy Code, could be both a debtor and a governmental unit.

Page 5

**In re: John and Candace Sarnovsky**
**Case No. 09-30037**

under § 726(a). However, even if this were not the case, a second and more fundamental problem exists with allowing the Debtors to receive, on account of their claims, a distribution of estate assets. Similar as above, this problem stems from the definitions contained in the Bankruptcy Code.

In the Bankruptcy Code, a creditor is defined, in relevant part, as an "entity that has a claim against the debtor . . . ." 11 U.S.C. § 101(10). As used here, a "claim" is defined as a "right to payment." 11 U.S.C. § 101(5)(A). A creditor is, thus, one who has a right to payment against the debtor which the Supreme Court has stated means simply an enforceable obligation. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990).

The law, however, does not recognize an entity's right to enforce a payment from itself. That is, a "contract requires at least two parties. A person cannot contract with or be bound to himself or herself, nor, in the absence of statute, can a person be bound to himself or herself with others."17A AM. JUR. 2d Contracts § 27. It is, therefore, impossible for a debtor and a creditor to be the same entity. This makes the two proofs of claim filed by the Debtors a legal nullity.

This principle is specifically recognized by the Bankruptcy Code, with only a creditor being afforded the right to make a claim against the estate. 11 U.S.C. § 501. A debtor, although in some instances it may file a claim on behalf of a creditor, is not afforded the right to make, in his or her own capacity, a claim against its own bankruptcy estate. As a consequence, regardless of whether there was an objection to the proofs of claim filed by the Debtors, they had no legal right to make the claims in the first instance.

To circumvent these impediments, it was the understanding of this Court that both the Debtors and the Trustee wanted the Court to overlook the Debtors' technical disqualification as priority claimants, and instead consider the reality that the Debtors, by paying from their own

Page 6

**In re: John and Candace Sarnovsky**
**Case No. 09-30037**

personal funds their outstanding tax liabilities, eliminated the need for those "governmental units" to file claims – claims which would have been entitled to priority under § 507(a)(8). As a result, it was contended that recognizing the Debtors' priority claims would not result in any harm to their other unsecured claimants because, had they not paid their outstanding tax liabilities, the tax claimants would have received the entire $12,941.22 in cash proceeds available for distribution on account of their priority claims.

The Debtors' position, that they stepped into the shoes of the governmental claimants in this case, by paying their tax claims, however, is neither equitable nor legally cognizable. It is not equitable because the Debtors are seeking to subordinate allowed claims to their interests, going against the Bankruptcy Code's priority scheme which is, itself, founded on principles of equity. *See, e.g., Braunstein v. McCabe*, 571 F.3d 108, 118 (1st Cir. 2009) ("the bankruptcy estate is distributed in accordance with the scheme of priorities set out in the Bankruptcy Code, and the nature of bankruptcy is equity.").

The Debtors' position is not legally cognizable because the Bankruptcy Code specifically makes allowance, in another context, for the type of contingency described by the Debtors. Specifically, the Bankruptcy Code allows parties holding a claim, as the result of paying a tax owed by the debtor to a governmental unit, to inure to the benefit of the nondischargeable status of the tax claim. 11 U.S.C. § 523(a)(14)/(14A). This contrasts with priority claims.

When paying the tax debt of a "governmental unit," nothing in the Bankruptcy Code expressly allows the Debtors to step into the shoes of the government and assume its priority status under § 507(a)(8) and § 726(a). The Court cannot assume that this omission was inadvertent. In matters of statutory interpretation, the Supreme Court has held that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

Page 7

In re: John and Candace Sarnovsky
Case No. 09-30037

exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). *See also Field v. Mans*, 516 U.S. 59, 67, 116 S.Ct. 437, 442, 133 L.Ed.2d 351 (1995) (applying the negative pregnant rule which holds that an "express statutory requirement here, contrasted with statutory silence there, shows an intent to confine the requirement to the specified instance.").

In conclusion, the Debtors are not entitled to assert, against their own bankruptcy estate, two priority claims. As a result, the Trustee's final report, which proposed to pay the Debtors' priority claims, cannot be approved. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of both parties, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the two priority proofs of claim, numbered 3-2 and 4-1, as filed by the Debtors, John and Candace Sarnovsky, be, and are hereby, DEEMED NOT ALLOWED.

***IT IS FURTHER ORDERED*** that, consistent with this decision and order, the Trustee file, within 21 days, a revised final report.

Dated: July 6, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 6th day of July, 2010 to:


Candace Kent Sarnovsky
555 Hallmark Pl
Worthington, OH 43085

John Michael Sarnovsky
555 Hallmark Pl
Worthington, OH 43085

Randy Lee Reeves
973 W North St
Lima, OH 45805

Bruce C French
PO Box 839
Lima, OH 45802

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court